# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 3, 2021

Lyle W. Cayce
Clerk

No. 21-40039

United My Funds, L.L.C.,

*Plaintiff—Appellee*,

*versus*

Hisham Mubaidin,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:19-CV-373

Before Barksdale, Engelhardt, and Oldham, *Circuit Judges*.
Per Curiam:[*]

Hisham Mubaidin sold the inventory of three gas stations that did not belong to him. The owner of the gas stations sued him for theft, and a jury awarded the owner damages. Mubaidin appeals, asking us to reverse the jury's verdict and award him attorney's fees. We affirm.

---

[*] Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 21-40039

I.

This case involves a dispute between former business partners over the management of three gas stations. United My Funds ("UMF"), a limited liability company wholly owned by James Yoo, owned the gas stations. Yoo and two business partners—Hisham Mubaidin and Chandana Perera—owned a separate LLC, Unitex Fuel, to operate the gas stations and supply fuel to them. Yoo alleged that Mubaidin and Perera, without his knowledge or involvement, leased the gas stations and sold their inventory on behalf of Unitex Fuel—cutting out UMF, the entity which actually owned the gas stations. The new lessor paid Mubaidin and Perera approximately $180,000 for the gas stations' inventory and for goodwill, some of which Perera pocketed and most of which they paid to a creditor of Unitex Fuel.

UMF sued Mubaidin and Perera. As relevant to this appeal, UMF brought a claim for theft under the Texas Theft Liability Act ("TTLA") and a common law claim for money had and received. After a four-day jury trial, the jury awarded UMF damages under both claims—$85,000 against Mubaidin for money had and received, $25,000 against Perera for money had and received, and $25,000 against each defendant for theft under the TTLA.

Mubaidin timely appealed.

II.

Mubaidin raises three issues. First, he argues that the TTLA award—which was based on the theory that Mubaidin and Perera stole the stores' inventory by selling it—cannot stand because UMF presented no competent evidence of the inventory's value. Second, he argues that the money had and received award was improper because Mubaidin never actually held the money—rather, his business partner and sometimes-attorney did. Third, he argues that he should be awarded attorney's fees as a "prevailing party"

2

No. 21-40039

under the TTLA because the district court rejected one of UMF's theories of recovery under that statute.

Mubaidin raised each of these issues in post-trial motions, and the district court rejected them. Our review is governed by the same standards that governed the district court. As to Mubaidin's first two issues:

> We consider all of the evidence, drawing all reasonable inferences and resolving all credibility determinations in the light most favorable to [UMF]. Although our review is de novo, we note that our standard of review with respect to a jury verdict is especially deferential. As such, judgment as a matter of law should not be granted unless the facts and inferences point so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary conclusion. A jury verdict must be upheld unless a reasonable jury would not have a legally sufficient evidentiary basis to find as the jury did.

*Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 282 (5th Cir. 2007) (quotations omitted). As to Mubaidin's third issue, "[w]e review the district court's [denial] of attorney's fees for abuse of discretion, although conclusions of law underlying the [denial] are reviewed de novo." *Id.* at 297.

A.

Mubaidin first argues that the jury's award under the TTLA was unsupported by the evidence. The TTLA allows a party injured by theft to recover the "actual damages" found by the trier of fact. Tex. Civ. Prac. & Rem. Code § 134.005(a). Both parties agree that the jury was required to base any TTLA damage award on the market value of the gas stations' inventory at the time Mubaidin and Perera sold them. *See Beaumont v. Basham*, 205 S.W.3d 608, 619 (Tex. App. 2006) (interpreting the term "actual damages" to mean the damages recoverable at common law).

3

Mubaidin claims that the TTLA award was unsupported by the evidence because the jury had no competent evidence of the inventory's market value. This argument fails, because the jury had before it at least two types of proper market value evidence. First, it had the testimony of Wail Al-Shayef, who managed the gas stations. Al-Shayef testified that he and his brother conducted an inventory inspection shortly before the wrongful sale and estimated the value of the inventory to be $70,000. This is competent evidence of market value because "an officer in a management position with duties that at least in some part relate to the property at issue" is qualified to testify to market value under Texas law. *Reid Rd. Mun. Util. Dist. No. 2 v. Speedy Stop Food Stores, Ltd.*, 337 S.W.3d 846, 854–55 (Tex. 2011). Second, the jury had evidence of the purchase price of the inventory. While the total amount paid for the inventory was disputed at trial, it is undisputed that Mubaidin received a $25,000 cashier's check labeled "for inventory" and another $52,244 payment earmarked "Fore [sic] inventory Unitex Fuel." The jury could consider purchase price evidence in determining market value. *See, e.g.*, *Burns v. Rochan*, 190 S.W.3d 263, 270 (Tex. App. 2006). So Mubaidin's objection that the jury lacked competent evidence of market value fails.

Mubaidin also argues that even if the jury had competent evidence of market value, its award cannot stand because the jury's TTLA verdict was outside the range of figures presented at trial. This argument fails: The range of figures presented to the jury included partial payments starting at $25,000, as well as Al-Shayef's testimony that the inventory was worth $70,000. After considering this evidence, the jury awarded UMF $50,000—$25,000 against each defendant. This falls comfortably within the range of figures presented at trial. Moreover, the thrust of Mubaidin's argument on this point is that the jury's award was too *low*—the jury awarded $50,000 when Al-Shayef's testimony suggested the inventory was worth at least $70,000. But Mubaidin

asks us to replace this arguably inadequate award with a take-nothing judgment. This approach would defy logic and is not supported by any of Mubaidin's authorities. *E.g.*, *Wegner v. State*, 829 S.W.2d 922, 922–23 (Tex. App. 1992) (remanding for a *higher* award in a condemnation proceeding after the jury went beneath the lowest amount suggested by an expert). Mubaidin's objections to the TTLA award lack merit.

### B.

Mubaidin's second argument is that the jury's award for money had and received was unsupported by the evidence. Money had and received is "an equitable doctrine applied to prevent unjust enrichment." *Plains Expl. & Prod. Co. v. Torch Energy Advisors Inc.*, 473 S.W.3d 296, 302 n.4 (Tex. 2015) (quotation omitted). "To prove a claim for money had and received, a plaintiff must show that a defendant holds money which in equity and good conscience belongs to him." *Id.* (quotation omitted). The jury awarded UMF $85,000 for money had and received, the sum of four wire payments that the inventory's buyer made to Michael McCullough, Mubaidin's lawyer, on January 24 and 25, 2019.

Mubaidin argues that the award for money had and received was unsupported by the evidence because Mubaidin never held the $85,000. Rather, Al-Shayef wired the money to McCullough, who wired it to a creditor of Unitex Fuel. The district court rejected this argument, finding that McCullough acted as Mubaidin's agent in receiving the funds and wiring them to Unitex Fuel's creditor.

The evidence supports the district court's finding that McCullough acted as Mubaidin's agent. Both Mubaidin and McCullough testified at trial that McCullough was Mubaidin's attorney. And under Texas law, "[t]he general rule is that the relationship of attorney and client is one of agency."

*Texas Emps. Ins. Ass'n v. Wermske*, 349 S.W.2d 90, 93 (Tex. 1961). Mubaidin argues that McCullough was not acting as his attorney when he received and forwarded the wire payments. But ample record evidence supports the district court's contrary finding, including the buyer's testimony that Mubaidin rejected an offer to pay him personally and instead instructed the buyer to wire the money to Mubaidin's attorney.

## C.

Finally, Mubaidin asks us to award him attorney's fees under the TTLA. "Each person who prevails in a suit under [the TTLA] shall be awarded court costs and reasonable and necessary attorney's fees." Tex. Civ. Prac. & Rem. Code § 134.005(b). Mubaidin lost under the TTLA—the jury awarded UMF a $25,000 TTLA award against him. But he argues that he *also* won under the TTLA because UMF failed to recover under a different theory—that Mubaidin had appropriated UMF's real property by wrongfully leasing it. Mubaidin claims this success in defeating a distinct theory of recovery makes him a "prevailing party" entitled to attorney's fees.

Mubaidin's position is supported by neither law nor logic. In the most analogous Texas case, the court refused to award attorney's fees to a TTLA defendant even though the defendant succeeding in preventing the plaintiff from recovering one category of claimed damages. *See Brinson Benefits, Inc. v. Hooper*, 501 S.W.3d 637, 642–43 (Tex. App. 2016). And as the *Brinson Benefits* court noted, accepting a theory like Mubaidin's "would invite ceaseless, wasteful litigation over how many elements of a claim or damage theory can be imagined." *Id.* at 643.

Mubaidin makes one final argument. He points out that the jury found that he and Perera were not part of a conspiracy to commit theft. Mubaidin

argues that this also entitles him to attorney's fees under the TTLA, because *Brinson Benefits* upheld an award of TTLA attorney's fees to different defendants who successfully defended against a claim of conspiracy to commit theft. *Id.* at 643–44. This argument fails. The conspiracy defendants in *Brinson Benefits* recovered attorney's fees because they had shown that they were not liable "for the underlying tort of theft." *Id.* Here, by contrast, the jury *did* hold Mubaidin liable for the underlying tort of theft. Accordingly, Mubaidin's successful defense against the conspiracy claim provides no basis for awarding him attorney's fees under the TTLA.

\* \* \*

The judgment of the district court is AFFIRMED.